MELVIN L. HUTNER & others[1] *vs.* CAPE CODDER
CONDOMINIUM BOARD OF TRUSTEES & others.[2]

No. 00-P-1284.

Barnstable. March 13, 2001. - August 31, 2001.

Present: GREENBERG, BECK, & COWIN, JJ.

*Condominiums,* Development rights, Master deed. *Real Property,*
Condominium. *Wetlands Protection Act. Department of Environmental
Protection.*

In an action by unit owners seeking to block further development of a
condominium complex whose master deed limited the developers' right to
construct an additional structure to a deadline of October 19, 1999, the
judge properly found that the trustees of the condominium trust had
complied with G. L. c. 183A, § 5(*b*)(2)(iii), in ratifying and recording a
ballot vote, where seventy-five per cent of the unit owners had impliedly
agreed to an extension of the developers' rights beyond October 19, 1999,
and nothing in the record or the pleadings suggested a new vote would
result in a different outcome. [432-433]
A Superior Court judge correctly concluded that a condominium unit owner's
appeal of the Department of Environmental Protection's order of condi-
tions wetlands permit to construct an additional structure was not timely
within the meaning of G. L. c. 30A, § 14(1), where the unit owner had
received legal notice of the decision on May 14, 1999, when an unidenti-
fied person signed a certified mail receipt of the decision, and the unit
owner's complaint, filed on June 16, 1999, was not filed within the statu-
tory period; this court did not reach the merits of the unit owner's appeal,
that he had good cause to request an extension, where nothing in the rec-
ord or the pleadings distinguished earlier cases holding that a request for
an extension must come within the statutory period [433-434].

CIVIL ACTION commenced in the Superior Court Department on
June 16, 1999.

[1]Frederick L. Bernstein and Kathleen C. Taylor. Although these three
plaintiffs filed notices of appeal, only plaintiffs Frederick L. Bernstein and
Kathleen C. Taylor filed briefs on appeal.

[2]Richard C. Pepin; Holly Management & Supply Company; Stuborn Limited
Partnership; Shoestring Properties, Inc.; Massachusetts Department of
Environmental Protection; and Falmouth Conservation Commission.

The case was heard by *Gerald F. O'Neill, Jr.,* J.

*Frederick L. Bernstein,* pro se.

*Mary F. O'Donnell Downey* for Kathleen C. Taylor.

*Richard A. Eustis* for Cape Codder Condominium Board of Trustees & others.

*Hung Tran,* Assistant Attorney General, for Department of Environmental Protection.

*Paul Revere, III,* for Holly Management & Supply Company & others.

GREENBERG, J. This case is closely related to *Bernstein* v. *Chief Bldg. Inspector & Bldg. Commr. of Falmouth, ante* 422 (2001). Frederick Bernstein and two other unit owners of the "Cape Codder" brought this related action in the Superior Court to block the construction of the final phase of the Cape Codder condominium complex in Falmouth. Their complaint, stripped of detail, alleges that the vote of the unit holders to extend the time prescribed in the master deed for completion of the final phase was a nullity. A discrete issue is whether the Falmouth conservation commission improvidentially granted a wetlands permit to the developers. A judge of the Superior Court decided both matters in favor of the defendants on cross motions for summary judgment and other related motions. He ruled that the trustees had properly conducted the vote on the extension and that the appeal of the Department of Environmental Protection's (DEP) order of conditions was untimely. We conclude that the judge's ruling was correct as to these claims and affirm.[3]

1. *Undisputed facts concerning the vote to extend development rights.* By 1989 the defendant developers and their predecessors-in-interest had completed twenty units of the Cape Codder condominium. Under the condominium's 1989 master deed, the developers reserved the right to increase the number of units by constructing an additional structure, "Building Five" (building five). The master deed explicitly limited the developers' right to expand construction to ten years — expiring on October 19, 1999.

---

[3]We do not consider issues that were not raised by the pleadings before the Superior Court judge.

Hutner *v.* Cape Codder Condominium Board of Trustees.

By letter to all twenty unit owners dated March 10, 1999, the Cape Codder trustees sent written proposals to extend development rights for two months to December 31, 1999, with provisions for additional extensions of up to thirty-four months.[4] Included with the proposal was a ballot form to express consent and a letter indicating that, if the unit owners were in agreement with the proposed extension, they should sign and return the form "within 60 days of receipt."

The responses to this proposal were as follows:

(1) The owners of thirteen units consented to the proposed extension as written[5];

(2) The owners of two units assented to a limited extension of the developers' rights beyond December 31, 1999; one to April 19 and the other to April 30[6];

(3) The owners of five units did not assent to an extension and signed an "Objection to Proposed Extension of Development Rights."

The trustees concluded that fifteen out of twenty (seventy-five percent of the units) assented to an extension to April 19,

---

[4]The extension was proposed as follows:

> "The extension of the development rights would initially only be through the end of this year (through December 1999). [The developer] could thereafter extend those rights for up to 34 additional months by making additional payments to the Condominium Trust in the amount of $3,000 per month."

[5]This number includes one unit that failed to return a ballot within the sixty-day period. It is undisputed that under the governing statute such a vote is counted as an assent.

> "Any consent required by this subsection shall be deemed to be given if, upon written notice by certified and first class mail, provided by the governing body of the organization of unit owners of a proposed action hereunder, to the unit owner or mortgagee whose consent is required, such unit owner or mortgagee fails to object within 60 days of the date of mailing of such notice."

G. L. c. 183A, § 5(*b*)(2), as appearing in St. 1998, c. 242, § 5.

[6]The owners of one unit signed a consent form but penned in a limitation to the extension "for no more than 6 months" past the October 19, 1999, date, i.e., to April 19, 2000. The owners of another unit used an objection form but expressly assented to an extension limited to April 30, 2000.

2000. The trustees ratified the extension vote on October 8, 1999, and recorded a certificate of the extension of the reserved rights at the Barnstable Registry of Deeds on October 18, 1999. The certificate limited the extension to April 19, 2000. The defendant developers did not ultimately exercise their extension rights beyond December 31, 1999.

2. *Analysis.* The assent of seventy-five per cent of a condominium's unit owners is required to extend developers' rights beyond those specifically set forth in a master deed. G. L. c. 183A, § 5(*b*)(2)(iii).[7] The plaintiffs argue that the trustees improperly recorded the certificate extending the developers' rights because seven of the twenty unit owners did not assent to the proposed extension as written.

The plaintiffs argue correctly that if either of the two ballots containing limitations on the extension period were to be counted as objections, the trustees would have improperly recorded the certificate. It would, however, elevate form over substance to count the votes in this way.

First, we do not agree that it is determinative that one of the two limited assents was returned on a form captioned "Objection to Proposed Extension of Development Rights," rather than on one captioned "Consent to Proposed Extension of Development Rights." While a caption may illuminate a document's text, we do not disregard the document's substance. Cf. *Commonwealth* v. *Vaidulas,* 433 Mass. 247, 252 (2001) (finding no prejudice to defendant merely because Commonwealth's notice of appeal may have been miscaptioned). Here, the text contained in the ballot extended development rights until April 30, 2000,

---

[7]This provision reads, in pertinent part:

"(2) The organization of unit owners, acting by and through its governing body, shall have the power and authority . . . to . . . (iii) [e]xtend, revive or grant rights to develop the condominium . . . . Any action taken pursuant to this subparagraph shall be taken upon such terms and conditions as the organization of unit owners may deem appropriate, . . . provided further, that the consent thereto, including the terms and conditions thereof, of not less than 75 per cent of owners of units within the condominium, or such lower percentage, if any, as the master deed may provide . . . ."

St. 1998, c. 242, § 5.

and can only be read as an assent to extend development rights to at least April 30, 2000.

The plaintiffs' better argument is that neither one of the two disputed votes was a limited assent, but, instead, each represented objections coupled with offers to amend the original proposal. Under this reasoning, the initial proposal was substantially altered by the amendments, and the proposal was defeated. The two unit owners, however, apparently construed the proposal as offering two options: (1) that the development rights be extended for two months, and if so (2) that additional future extensions (limited to an additional thirty-four months) be exercisable on a month-to-month basis. Although these options were not presented as separate questions, the unit voters could logically distinguish the first from the second option.

Even if we were to agree in theory with the plaintiffs' tally of the votes, we would not invalidate the certificate on that basis alone because we do not see how the plaintiffs were prejudiced. The remedy for a defective ratification would be resubmission to the unit owners. Nothing in the record or pleadings suggests that a new vote would result in a different outcome. Fifteen of the twenty units impliedly agreed to the extension of development rights beyond October 19, 1999, and the developers did not exercise their (disputed) rights under the certificate to seek monthly extensions beyond December 31, 1999.

Neither the master deed nor the governing statute precludes the trustees from ratifying a vote that represents an expressly limited compromise. We find no practical or legal flaw in the Superior Court judge's framing of the issue and agree that seventy-five per cent of the voters assented to an extension beyond the October 19, 1999, deadline. Thus, we affirm the Superior Court summary judgment ruling in favor of the defendants on this issue.

3. *Bernstein's appeal of the DEP decision.* On June 16, 1998, the town of Falmouth conservation commission sent the defendant developer an "order of conditions" wetlands permit to construct building five. Bernstein appealed the permit to the DEP. On October 15, 1998, the DEP issued a "superseding order of conditions" related to a Falmouth conservation commission permit for building five, essentially affirming the

original permit. Bernstein appealed the DEP's "superseding order of conditions" to an administrative law judge (ALJ). On April 9, 1999, the ALJ dismissed the appeal because Bernstein "lack[ed] standing, individually to appeal a wetlands superseding order of conditions allowing [the] work . . . because [ ] G. L. c. 183A, § 10(b)(4) vests authority to litigate claims concerning a condominium's common areas exclusively in the condominium association."[8]

On May 12, 1999, the ALJ denied Bernstein's motion for rehearing and request for extension of the date for intervention by other parties. A party unknown to Bernstein signed a United States Postal Service return receipt of this final judgment on May 14, 1999. Over thirty days later, on June 16, 1999, Bernstein sought review of the ALJ's dismissal in a complaint to the Barnstable Superior Court.

Bernstein received legal notice of the DEP's rehearing decision on Friday, May 14, 1999, when an unidentified person signed the certified mail receipt of the decision. We do not reach the merits of his appeal, dated June 16, 1999, because it was filed after the statutory deadline. See G. L. c. 30A, § 14(1) (requiring requests for review to be filed within thirty days after receipt of notice of agency decisions unless good cause for an extension is shown).

Bernstein argues that he had good cause to request an extension, because his secretary date-stamped the decision when she received it on Monday, May 17. We do not reach Bernstein's "good cause" argument, however, because he does not attempt to distinguish our cases holding that a request for an extension must come within the statutory period, and not after it has already expired. See *Flynn* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 668, 669 (1984); *Wolbach* v. *Beckett*, 20 Mass. App. Ct. 302, 308 (1985).

*Judgment affirmed.*

---

[8]The ALJ acknowledged Bernstein's request that she take judicial notice of the Land Court's decision that Bernstein did in fact have individual standing to litigate zoning permits. Because Bernstein failed to provide her with a copy of the decision, the ALJ declined to take judicial notice of it.